(No. 20495.—

CARL J. JOHNSON, Appellant, *vs.* WILLIAM BOLAND *et al.*
Appellees.

*Opinion filed April 23, 1931.*

R. C. RICE, (SIG. B. NELSON, of counsel,) for appellant.

BURNETT M. CHIPERFIELD, CLAUDE E. CHIPERFIELD, and ROBERT B. CHIPERFIELD, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The construction of a will is presented by this appeal, which comes from a decree of the circuit court of Knox county, where a bill for partition was dismissed for want of equity.

John Bolund (also spelled Boland) died testate on July 3, 1911, leaving his widow, Anna Bolund, his two daughters, Ida Bolund Johnson and Anna Bolund Urelius, and his two sons, William Bolund and J. Alfred Bolund, all adults, as his sole surviving heirs-at-law. His will was duly probated and his estate administered upon and closed. After first providing for the payment of his debts he gave all his real and personal property to his wife for her lifetime. He then provided in the third clause that upon her death "I give, bequeath and devise my property and estate both real and personal as hereinafter stated with the express limitation that no part of my real estate shall be sold, conveyed or disposed of until after a period of ten years by any or either of my heirs," etc. By the fourth clause he devised 240 acres of farm land to his two sons above named, subject to his wife's life estate and to a restriction against sale within ten years, and upon condition that they pay a $5000 mortgage indebtedness, together with payments of $4000 to Anna B. Urelius and $5000 to Ida B. Johnson, which bequests are made liens upon the land until paid. By the fifth and sixth clauses of the will the testator devised certain real estate to his two daughters above named. By the seventh clause he directed the executor to enforce payment of the bequests "by any appropriate means and if necessary to sell and convey so much of the real estate as shall be necessary to enforce the payment thereof;" and by the eighth clause he provided that upon the death of his wife all the residue of his estate should be divided

equally among his sons and daughters. Then follows the clause in question:

"*Ninth*—Upon the death of any of my aforesaid children, the share given, bequeathed or devised to such deceased child shall go to his or her child or children, the descendants of such deceased child or grandchild to take the share to which their children would have been entitled if living in equal parts among them. But in the event that any or either of my aforesaid children shall die without issue or without leaving any child or children or descendant of child or children surviving him or her, then the share given, bequeathed or devised herein to such deceased child or children shall revert back to my estate and go and descend to my remaining children, brother or sister of such deceased child, to be divided in equal parts among such of my surviving children and the descendants of any child that may have died leaving children."

Anna Bolund, the widow, died in 1915. Ida B. Johnson then took possession of the real estate devised to her and remained in possession until her death, February 27, 1928, and since her death her husband, Carl J. Johnson, the appellant, has been in possession of said premises. Ida B. Johnson left as her only heirs-at-law her husband, her sister, Anna B. Urelius, and her two brothers, J. Alfred and William. Johnson then brought his suit for partition, making the other heirs of Ida defendants, and alleging that as surviving husband of Ida he was entitled to homestead in the premises devised to her by the will of her father, and that subject thereto he was the owner of an equal undivided one-half of the premises and entitled to his dower right in the other half; and that, subject to his rights, Anna B. Urelius, J. Alfred and William Bolund were each entitled to an equal undivided one-third of one-half of the premises. The defendants by their answer denied that Johnson had any interest in the devised real estate after the death of his wife and claimed that the land in question

was owned by the three defendants. Replication was filed, reference had to the master in chancery and proof taken. In his report the master found the equities to be with the complainant, and construed the ninth paragraph of the will to mean that upon the death of any of the testator's children prior to the death of the life tenant, Anna Bolund, then the share given by the testator to such deceased child should go to the descendants of such deceased child, or should go to the testator's remaining children in case such deceased child died prior to the death of the life tenant and without leaving issue or descendants; that Ida B. Johnson survived the life tenant, and thereupon became seized of the fee in the real estate involved upon the death of the life tenant; that the rights and interests of the parties in the real estate involved had been correctly set forth in the bill and that a decree of partition should be entered accordingly. Objections made to the report were overruled by the master and by agreement were allowed to stand as exceptions before the court, where they were sustained and the bill dismissed, as first noted.

There is no controversy as to the facts in this case. The point at issue is the proper construction of the ninth clause of the will of John Bolund, taken in connection with all other parts of the will. The whole will is to be considered and every provision given due weight. The paramount rule in construing a will is to ascertain and give effect to the intention expressed by the testator unless he has attempted to dispose of his property contrary to some rule of law or public policy. (*McCormick* v. *Sanford*, 318 Ill. 544; *Carlin* v. *Helm*, 331 id. 213; *Fay* v. *Fay*, 336 id. 299.) In interpreting a particular provision of a will the law authorizes a consideration of the whole will, and the intention of the testator will be determined from a consideration of all the language he has used, in whatever portion of the will it may be found. *Drager* v. *McIntosh*, 316 Ill. 460.

Appellees contend that by the ninth clause of his will Bolund expressed an intent that in no event should the land devised to his daughter Ida vest in any other person than her children, or, in default of issue surviving her, to his own children who survived her—in other words, that the property should be kept in his own family. We can not agree with this contention, and a consideration of the whole instrument reveals expressions of contrary intent. The ninth clause of the will does not mention Ida or any of his three other children but refers to them as a class. Therefore its provisions must be construed as applicable to all four of his children, in which case the devises to all of them, according to appellees' position, would be contingent upon their respective deaths with issue living. Applying this principle to other clauses of the will yields absurd results. For instance, under the fourth clause the testator gave his farm to his two sons, Alfred and William, and provided that they pay a mortgage indebtedness of $5000, that they pay their sister Ida a further sum of $5000, and that they pay their sister Anna a further sum of $4000. It would be unreasonable to suppose that the testator would require his two sons to pay out the sum of $14,000 if they were only to receive a life estate under the will. The third clause of the will also indicates an intention opposite to appellees' position. By this clause Bolund expressly provides that none of his land shall be sold or conveyed by any of his heirs in any manner until after a period of ten years. This clause does not indicate any intention to create only a life estate in his children but rather shows a belief that he was giving them his property in fee, so they could sell it after the ten-year period if they so desired.

Aside from these and other provisions in the will which make appellees' position untenable it must be noted that the will contains no specific provision to take care of the contingency created by the death of any child prior to the death of the life tenant unless the ninth clause is so construed.

The vesting of title upon the death of the life tenant (his wife) was more immediate to him than the vesting upon the death of one or more of his children. It was one generation nearer to him. The third and eighth clauses of the will show that the testator emphasized the element of time by providing in both clauses that his children should take his property "upon the death" of his wife. In construing a will the law favors the vesting of estates at the earliest possible moment, and where a will is capable of two constructions the courts will give an estate of inheritance to the first devisee unless a contrary intention is clearly shown. *Boys* v. *Boys,* 328 Ill. 47; *Kaup* v. *Weathers,* 302 id. 569; *Dustin* v. *Brown,* 297 id. 499; *Williamson* v. *Carnes,* 284 id. 521.

It is further insisted by appellees that where a devise refers to death connected with a contingency which may or may not happen, such as death without child or children surviving the devisee, the time of death referred to is at any time under the conditions named in the will, either before or after the testator's death. A number of cases are cited in support of this contention, and it is true that the position of this court has not always been clear. In the cited case of *Gavvin* v. *Carroll,* 276 Ill. 478, where the devise after a life estate was to an individual with a single gift over, "should he die without issue," to the testator's children surviving at the death of the first taker, this court held that "die" meant death at any time, even after the death of the life tenant. This conclusion was deduced from the decision in *Fifer* v. *Allen,* 228 Ill. 507, and other similar cases which followed the English authorities. In *Fifer* v. *Allen* there was no preceding life estate as in the case at bar, but nevertheless it subsequently was cited with approval in *Kleinhans* v. *Kleinhans,* 253 Ill. 620, where the court held that "die" meant die at any time, even after the death of the life tenant. Subsequent to the *Kleinhans case* and before and after *Gavvin* v. *Carroll, supra,* this court laid down a different rule in *Lachenmyer* v. *Gehlbach,* 266 Ill.

11, where it was declared that if a gift is postponed pending the termination of a particular estate which intervenes between the death of the testator and the time when the remainder will take effect in possession and there is a devise over upon the death of the first taker without issue, the testator is held to contemplate a death during the continuance of the particular estate unless a contrary intent is found in the will. This rule has been affirmed in a formidable array of decisions down to the present time and is sustained by much greater weight of authority than the contrary rule announced in the cases of *Kleinhans* v. *Kleinhans, supra,* and *Gavvin* v. *Carroll, supra.* In *Sheley* v. *Sheley,* 272 Ill. 95, there was a devise of a life estate to a widow with remainder to the testator's children, but if any one or more of them should die without issue the share of the deceased child should revert back to the estate and be divided equally among all the surviving heirs—a devise almost identical with that in the Bolund will. In the *Sheley case* all the children were held to be seized in fee simple of the remainder upon the death of the life tenant. This same rule has been applied under similar circumstances in *Welch* v. *Crowe,* 278 Ill. 244, *Ames* v. *Smith,* 284 id. 63, *Fulwiler* v. *McClun,* 285 id. 174, *Morris* v. *Phillips,* 287 id. 633, *Risser* v. *Ayers,* 306 id. 293, and *Clark* v. *Leavitt,* 330 id. 350. In all of those cases we held that the rule applicable is, that where there is a devise *simpliciter* to one person and in case of his death to another, there being no contingent or doubtful circumstances connected with such death, the testator will be presumed to intend a death preceding his own, but if the devise over is to take effect in case of the death of the first taker under circumstances which may or may not take place, the devise over, unless controlled by other provisions of the will, will take effect upon the death of the first taker under the circumstances specified, either before or after the death of the testator. Thus, when a gift over is preceded by a particular estate the gift over will

usually take effect if the contingency happens at any time during the period of the particular estate, and in such case death without issue has uniformly been held to mean death before the death of the life tenant unless the will shows that the testator intended to refer to a later date than the termination of the life estate. Here a particular estate was given to the wife, Anna Bolund, and the third and eighth clauses of the will, which must be read in conjunction with the ninth clause, both provided that "upon the death of my wife" the children should take the property bequeathed and devised to them. The fourth, fifth and sixth clauses of the will contained specific bequests and devises to each of the testator's four children, and the death of any of the children, as mentioned in the ninth clause, meant their death before the death of their mother. If there had been no preceding life estate given to the widow then the position of appellees would be correct and the reasoning in the case of *Liesman v. Liesman,* 331 Ill. 287, relied upon by them, would apply. In the *Liesman case* there was no preceding particular estate, and for this reason it must be distinguished from the case at bar.

It is further urged that the ninth clause of the will restricted the third clause to a life estate, and the case of *Liesman v. Liesman, supra,* is again cited as an instance where the devise of a fee has been changed by subsequent words in a will to an estate for life. The rule there announced is correct where the will contains two clauses which are so repugnant to each other that reconciliation is impossible, but no such conflict exists in the Bolund will, where the third and ninth clauses can, and should, be read and construed together so as to give effect to both according to the testator's intention.

In this case there is nothing in the will which would justify a conclusion that John Bolund had in mind any later period for the vesting of title than the termination of the life estate. There is therefore nothing to take this case

out of the general rule laid down by the greater weight of authority in this State. On the contrary, as above noted, the construction asked for by appellees, when applied alike to all the testator's children, would produce harsh and unreasonable results and do violence to the expressed intent of the testator in other portions of the will. Upon the death of Anna Bolund, the life tenant, the daughter Ida became vested with a fee simple title to the property devised to her, and it follows that the court erred in dismissing the bill for want of equity.

The decree is reversed and the cause is remanded, with directions to enter a decree in accordance with the prayer of the bill. *Reversed and remanded, with directions.*