WATSON, Judge.
At issue in this lawsuit is the interpretation of the will of the late Orlando B. Carter, whose succession is the defendant. The olographic will was admitted to pro *371 bate by decedent’s surviving wife, Tavia Carter, born Rutherford, who appears herein as the succession representative. She contends that the will makes her the particular and universal legatee and entitles her to ownership of all decedent’s property. She is opposed by plaintiffs, who are decedent’s brothers and sisters. The trial court rendered judgment sustaining the widow’s position.
Decedent’s six surviving siblings, Mrs. Vida Carter Doxey, Stephen L. Carter, Harold D. Carter, W. H. Carter, Ethel E. Carter and Mrs. Bertha Carter Clifton, filed a petition claiming that the will did not dispose of the separate estate of Orlando B. Carter, and that, since he left no ascendants or descendants, they, as his brothers and sisters, are entitled to one-sixth each of his separate estate. Three of these parties, Harold D. Carter, W. H. Carter and Mrs. Bertha Carter Clifton, filed a motion prior to trial to have their claims dismissed with prejudice. The other three siblings have appealed from the adverse judgment of the trial court.
The pertinent portion of the will dated December 6, 1970, is as follows :
“I do hereby bequeath unto my beloved wife, Tavia Rutherford Carter all of my interest in our home place consisting of fifteen acres more or less.
“I further bequeath all of my interests received as a legal heir from (my parents) Selika P. Carter natural mother and S. O. Carter my natural father.
“All cash, bonds, and other valuables I may possess at my death.” (TR. 13)
The appellant siblings contend that there is no legatee named in the last two paragraphs and thus that the defendant died intestate as to his separate property. The appellee widow contends that “further” in the second paragraph refers back to the first paragraph and supplies the omitted name by reference.
The trial court held that the language of the will gives a first impression of leaving the surviving wife all of the property mentioned in the will and that this was the intention of the testator.
The parties agreed that the court would interpret the will on its face and that no evidence would be introduced or considered. (TR. 109).
The issue, therefore, is whether an intent by the testator to leave the property mentioned in the second and third paragraphs of the will to his wife is sufficiently clear to authorize the court to supply her missing name as legatee in those paragraphs.
The general rules for the interpretation of legacies are set forth in the Louisiana Civil Code. In point here are the following:
LSA-C.C. art. 1712:
“In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.”
LSA-C.C. art. 1713:
“A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.”
LSA-C.C. art. 1715:
“When, from the terms made use of by the testator, his intention cannot be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.”
LSA-C.C. art. 1717:
“If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least.”
The trial court relied on the rule enunciated in Succession of Bobb, 41 La. *372 Ann. 247, 5 So. 757 (1889) that a will is to be interpreted according to the first and natural impression derived from reading it. The first and natural impression, in our opinion, does not mean the result of a casual reading, overlooking the omission of a legatee’s name in the second paragraph; we construe this rule to mean the result of a deliberate reading with full appreciation of the words used (or not used).
 An equally strong rule is that a court interpreting a will cannot supply for the testator something he has omitted.
“Construction must not be placed upon wills so as to put in the mouth of the testator that which he refrained from saying.” Maguire v. Maguire, 110 La. 279, 34 So. 443 (1903).
While a will must be interpreted in the sense that will give it effect, if that be legally possible, a court cannot make a will for a person deceased or give effect to a will through a method other than that set up by the testator. Succession of Canton, 144 La. 113, 80 So. 218 (1918).
It is contended by the wife that the word “further” is used in the sense of “in addition” and means here that the wife is left the other things enumerated. No Louisiana case being directly in point, the Illinois case of McKie v. Collinson, 292 Ill. 458, 127 N.E. 92 (1920), is cited as authority for this interpretation. A distinction noted between that case and this is that the word “further” appeared in the same paragraph as the preceding bequest in that case. Another and stronger distinction is that the McKie will used the phrase “I give to my” and the word “wife” was obviously omitted; the testator had just used the identical phrase in the preceding sentence where he had given something to his wife. In the present case, Carter said only “I further bequeath” and he did not say to whom.
Our reading of this will indicates that the word “further” could possibly mean that the testator, in addition to the home place which he left his wife, was indicating what else comprised his estate, with no indication of whom was to receive it.
The will is thus ambiguous. The testator made a specific bequest to his wife of the “home place”. He may have known that the separate property which he left in the second paragraph would go by operation of law to his brothers and sisters and that the community property mentioned in the third paragraph would go by operation of law to his wife. This construction is quite as reasonable as the other. This interpretation does not render any portion of the will void and does not have the defect of supplying what the testator may or may not have omitted in the second and third paragraphs. We cannot provide by conjecture what the testator omitted and must interpret the will as it is written. If the testator intended to leave everything to his widow, the language enumerating his estate becomes meaningless. An unanswered question which militates against finding an intention to leave everything to the widow is: if that was his intent why did he not say so; why did he list his property ?
Applicable is the rule of Succession of Montegut, 217 La. 1023, 47 So.2d 898 (1950):
“ . . . that in case of doubt, that interpretation should be preferred which will approximate closest to the legal order of distribution.” 47 So.2d 900
For the reasons assigned we find that the trial court erred as a matter of law in dismissing appellants’ claim. We find that the appellants are entitled to an order to be entered by the trial court recognizing their status as heirs of Orlando B. Carter, as provided by law, and limiting the execution of his last will and testament to the provisions of the first paragraph thereof. The judgment of the trial court dismissing appellants’ claim is reversed and the case is remanded for further proceedings according to law.
*373 Costs are taxed against Tavia Carter.
Reversed and remanded.
BEER, J., concurs and assigns written reasons.