(No. 13465.—Reversed and remanded.)

Minnie Warrington *et al.* Defendants in Error, *vs.* Ruth Virginia Chester, Plaintiff in Error.

*Opinion filed October 23, 1920.*

1. Appeals and errors—*when freehold is involved in partition suit involving merely a charge against interest of defendant.* A writ of error brings up the whole record, and although the only controversy in a partition suit is in regard to a charge against the interest of the plaintiff in error, who is a minor, a freehold is in-volved, where the assignments of error question the order approv-ing the report of sale.

2. Wills—*when issue of remainder-man takes executory de-vise free from charges created by parent.* Where a testator de-vises his wife a life estate with remainder to his named children, "the issue of any child who may have then deceased taking the share to which such deceased child would be entitled to if living," the remainder-men take a base fee and the issue of a remainder-man who dies before the life tenant will take the parent's share by way of executory devise, and the interest so taken will not be subject to any charges created by the remainder-man in his life-time. (*Lachenmyer* v. *Gehlbach,* 266 Ill. 11, followed; *Knight* v. *Pottgieser,* 176 id. 368, criticised.)

3. Partition—*when decree of sale must be reversed.* Where complainants in a partition suit are purchasers at the sale there-

under they are chargeable with notice of an error in the decree of partition making a certain charge against the interest of a minor defendant, and upon the reversal of the decree of partition the order approving the sale must be reversed and the sale set aside.

4. SAME—*when solicitor's fees cannot be taxed as costs.* Solicitor's fees for complainants should not be taxed as costs in a partition suit by remainder-men against a minor defendant, in which the only issue is whether there should be a charge against the interest of the defendant in the proceeds of the sale at which the complainants were the purchasers.

5. SAME—*when terms of sale should allow reasonable credit.* Where a suit for partition is brought against a minor defendant and the property which must be sold is of some value, the terms of sale should not require the payment of the entire purchase money in cash but should allow such reasonable credit as will invite other bidders than the complainants or persons able to pay cash.

6. JUDGMENTS AND DECREES—*title acquired by parties to suit under erroneous decree must be divested upon reversal.* A party to a suit is presumed to know all the errors in the record and cannot acquire any rights based on an erroneous decree that will not be abrogated by a subsequent reversal, and titles acquired by parties to a record under an erroneous decree or judgment will be divested upon reversal.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

WOLSELEY & BALL, and H. T. SCHUMACHER, (G. A. BURESH, of counsel,) for plaintiff in error.

A. D. MULLIKEN, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Elias O. Chester died on February 24, 1910, leaving a will, the second and third clauses of which disposed of his property as follows:

"*Second*—I give, devise and bequeath unto my beloved wife, Virginia S. Chester, all my real and personal estate, of whatsoever kind or nature and wherever situate, so long as she shall remain my widow.

"*Third*—Upon the re-marriage of my said wife or upon her death, I give, devise and bequeath the real estate above devised to her, together with any part of my personal estate at such time remaining undisposed of, to my children, Ida Belle Chester, Mrs. Minnie Warrington, Oscar Paul Chester, Manley E. Chester and Mabel Chester, to be equally divided among them, my said children, the issue of any child who may have then deceased taking the share to which such deceased child would be entitled to if living."

Oscar P. Chester died on June 23, 1916, leaving a widow and his daughter, Ruth Virginia Chester, his only heir, then about four years old. During his lifetime he received from Virginia S. Chester three sums of money of $1000 each, for each of which he gave a receipt in the following form:

"This is to certify that I, the undersigned, Oscar Paul Chester, have this day received of Virginia S. Chester the sum of $1000, which said sum is paid by her to me and is hereby accepted by me as an advancement on the portion that may be or become due to me, my heirs, executors or assigns, from the estate of Elias O. Chester and Virginia S. Chester, or either of them."

Virginia S. Chester died on April 20, 1919, and on April 24 the four surviving children of Elias O. Chester filed a bill in the circuit court of Champaign county against Ruth Virginia Chester for the partition of the real estate devised by the will of Elias O. Chester, consisting of 120 acres of land in Champaign county and the residence in Champaign, which had been occupied by Mrs. Chester as her homestead. The bill alleged the payment of $3000 to Oscar P. Chester, and prayed that that amount be decreed as so much received by Ruth Virginia Chester and charged against her interest in the real estate. A guardian *ad litem* was appointed and filed an answer calling for strict proof of the bill. The cause was referred to a master, who took the evidence and made his report recommending a decree of partition in accordance with the prayer of the bill, charging Ruth Virginia

·Chester with the $3000 received by her father. Objections to the report were overruled and a decree was entered in accordance with its recommendation. The commissioners reported that the real estate was not susceptible of partition without manifest prejudice to the parties in interest and that they had appraised it in separate parcels at $82,000. The report of the commissioners was approved and a decree of sale entered, the terms being ten per cent of the purchase price cash on the day of sale and the balance cash on the approval of the report of sale and tender of deeds by the master. The master reported that he had sold the property on January 17, 1920, to the complainants for $77,800, and the court entered an order approving the sale and fixing the complainants' solicitor's fees at $1600, which was apportioned so that each of the complainants and the defendant, Ruth Virginia Chester, should pay one-fifth of it. The plaintiff in error sued out a writ of error from the Appel-·late Court, and that court at the April term transferred the cause to the Supreme Court.

The cause was properly transferred. The writ of error brings up the whole record, and while the controversy as to the decree of partition was only in regard to the charge of $3000 against the interest of the plaintiff in error, the assignments of error question the order approving the report of sale and therefore a freehold is involved.

The case of *Lachenmyer* v. *Gehlbach,* 266 Ill. 11, is conclusive as to the estate devised to Oscar P. Chester. There is no substantial difference between the devises in that case and this, except that in that case there was a devise over upon the death of the remainder-man before the termination of the life estate with or without issue, while in this case the gift over is only if the remainder-man leaves issue. The estate devised to Oscar P. Chester was a base ·fee, terminable upon his death in the lifetime of Virginia S. Chester leaving issue, with an executory devise in such event to the issue. He could not destroy the executory in-

terest of his child, the plaintiff in error, neither could he create any charge against it. .

In *Knight* v. *Pottgieser,* 176 Ill. 368, the estate devised to the remainder-man was held to be a vested remainder in fee, and the claim of the appellant that it was subject to be divested by the death of the remainder-man during the continuance of the life estate without leaving descendants was overruled. The language of the gift over after the life estate to the widow was, "upon and at her death the same to go to and be divided amongst my children and their descendants in equal shares, the descendant or descendants of a deceased child to take the parent's share in equal proportions." A son of the testator died in the lifetime of the widow leaving a widow and no descendant, and the question to be decided was whether his share in the estate descended to his heirs so that his widow inherited an undivided one-half, or was terminated and the heirs of the testator succeeded to it. It was properly decided that the remainder was vested and that it was not terminated by the death of the remainder-man without descendants. The language that there is nothing in the will upon which the supposition may be reasonably based that the testator intended to qualify or limit the character of the interest to be taken by those entitled to be vested with the remainder was correct as applied to the case then in litigation. It was not accurate as a general statement in regard to the devise. There was a limitation in the remainder to the children by the words, "the descendant or descendants of a deceased child to take the parent's share in equal proportions." If the deceased remainder-man had left a child the case would have been like this. The statement in the opinion that "a fee in the remainder, subject to be divested by the death of the person seized prior to the death of the life tenant, is not for any practical purpose to be distinguished from a remainder contingent upon the remainder-man surviving

the life tenant," is not a correct statement. Such a fee has all the attributes of a fee simple, except that the entire interest is subject to be defeated by the happening of the condition. The estate may be possessed, incumbered, sold and conveyed in the same manner as a fee simple, but the executory interest created by the happening of the condition which terminates such estate cannot be defeated.

The decree of partition was erroneous in charging the share of the plaintiff in error with the sums received by her father, and with it the decree of sale must also be reversed. Since the complainants were the purchasers at the sale and must be held to have had notice of the errors in the decree, the order approving the sale must be reversed and the sale set aside. A party to a suit is presumed to know of all errors in the record and cannot acquire any rights based on an erroneous decree that will not be abrogated by a subsequent reversal. Titles acquired by parties to a record under an erroneous decree or judgment will be divested by the subsequent reversal of such decree or judgment. *Ure* v. *Ure,* 223 Ill. 454; *McJilton* v. *Love,* 13 id. 486; *Miller* v. *Doran,* 245 id. 200.

This case is not one in which the statutes authorize the allowance of a solicitor's fee to be taxed as costs. In case of another decree of sale, in view of the value of the property and the minority of the plaintiff in error, the terms should not require payment of the entire purchase money in cash without any option for such reasonable credit as will not limit prospective bidders to the complainants or persons able to pay cash.

The decree is reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*