(No. 24818.—

MERLIN SMITH *et al.* Appellees, *vs.* MABEL L. SHEPARD *et al.*—(ADAH LAURA ZILM MATTICE *et al.* Appellants.)

*Opinion filed February 15, 1939.*

Paul N. Holtgreve, and Todd, Arber, Pendarvis & Anderson, (Robert D. Morgan, of counsel,) for appellants.

Wallace J. Black, Clyde M. West, Glen J. Cameron, and George W. Hunt, (Kenneth W. Black, of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

Fred Zilm died in 1915 leaving a last will and testament. Item 2 of the will provided: "To my beloved wife, Fredericka Zilm, if she survives me, I will, devise and bequeath all of my estate both real and personal which shall remain after the payment of my funeral expenses and the just claims against my estate, to have and to hold and the use, control, income and profits thereof to have and enjoy,

for and during her natural life." Item 3 provided: "It is my will that upon the death of my said wife, all of my estate then remaining shall be divided equally among my children, share and share alike, the descendants of any deceased child to take the parent's share."

Fred Zilm left him surviving his widow, Fredericka, and his children, nine in number, one of whom was named Awald Zilm. The widow occupied the lands as life tenant until her death on November 19, 1931. On September 12, 1921, Awald Zilm and his wife, Mabel, now Mabel L. Shepard, executed a trust deed to John S. Thompson upon a one-ninth interest in the land devised by the father, to secure a loan of $5300. On January 8, 1923, Awald Zilm and wife negotiated an additional loan of $2500, secured by a second trust deed to John S. Thompson upon the same land. The debts were evidenced by six notes, all of which became due March 1, 1927. Awald Zilm died intestate April 25, 1928 (before the death of his mother) leaving surviving Mabel L. Zilm, his widow, and three children, the appellants, Adah Laura Zilm Mattice, Walter Vernon Zilm and Lester Awald Zilm, his only heirs and descendants. On July 13, 1928, Mabel L. Zilm filed in the office of the recorder of deeds a written election to take in lieu of dower a one-third in fee of each parcel of real estate owned by Awald Zilm, including his supposed one-ninth interest in the real estate devised by the will of Frederick Zilm. On July 28, 1934, the owners of the notes secured by the first trust deed, together with the trustee, filed a suit in the circuit court of Marshall county, Illinois, praying for an interpretation of the third clause of the will of Frederick Zilm and setting forth the execution of the two trust deeds, making defendants the holders of the notes under the second trust deed, and all other necessary parties in interest, and further praying for a foreclosure of the first trust deed.

The specific dispute as to the interpretation of Frederick Zilm's will, as disclosed by the complaint and answer, arises

from a claim of plaintiffs that Awald Zilm took an indefeasible interest in the estate of Frederick Zilm, subject only to the life estate of Fredericka Zilm. The appellants, children of Awald Zilm, claimed that Awald Zilm took a remainder in fee, which, whether vested or contingent, was a base or determinable fee subject to being divested by an executory devise over to themselves as descendants of Awald Zilm, if his death should occur prior to the death of the widow, and further praying that the trust deeds, and the election of Mabel L. Zilm (now Shepard) to take a fee simple interest in said real estate in lieu of dower, be canceled. A decree was entered by the court finding Awald Zilm, under item 3 of the will of the father, was vested with a fee simple title to an undivided one-ninth interest in the lands of which Frederick Zilm was seized at the time of his death, subject to the life estate of Fredericka Zilm, and that Mabel L. Zilm, (now Shepard), the widow of Awald Zilm, by reason of her election not to take dower, became vested in fee of an undivided three eighty-firsts of the land left by Frederick Zilm, and the three children of Awald Zilm each became seized of an undivided two eighty-firsts of said real estate, all subject to the life estate of Fredericka Zilm, and that, therefore, the interest of Awald Zilm became liable for the payment of his debts and accordingly ordered the one-ninth interest in certain described real estate left by the said Frederick Zilm to be sold to satisfy the unpaid indebtedness. From that decree this appeal is taken.

There can be no doubt that a freehold is necessarily involved in a decision of this case. (*Wright* v. *Logan*, 364 Ill. 33; *Kagy* v. *Luke*, 357 id. 512.) The principal controversy is the proper construction to be given the third clause of the will of Frederick Zilm.

Two contentions are made—one, that Frederick Zilm intended his children, at the moment of his death, to have an indefeasible interest subject to his widow's life estate,

and if it happened that the child should predecease him the descendants of such child would take in his place, and the other, that the indefeasible title would not be in a child or descendant of child until a time not fixed by the testator's death, but by an event which might happen before or after his death. It is, therefore, necessary for us to ascertain to what time the testator referred by the sentence "the descendants of any deceased child to take the parent's share," because, if he referred to a child dying before himself, a different estate is created than one that would arise if he referred to the death of a child occurring before the death of the life tenant.

The intention of a testator manifested in his will is determined in two ways. One, by ascertaining his actual meaning from the words employed, to which all rules of construction give way, and the other, by finding his presumed intention gathered by the application of rules of construction applicable to all cases where the meaning is obscure, doubtful or uncertain. The general rule of ascertaining the time "of death" in a will as fixing a time for an estate to take effect, has been frequently announced in the following language: "Where there is a devise *simpliciter* to one person and in case of his death to another, there being no contingent or doubtful circumstances connected with such death, the testator will be presumed to intend a death preceding his own, but if the devise over is to take effect in case of the death of the first taker under circumstances which may or may not take place, the devise over, unless controlled by other provisions of the will, will take effect upon the death of the first taker under the circumstances specified either before or after the death of the testator. Thus, when a gift over is preceded by a particular estate the gift over will usually take effect if the contingency happens at any time during the period of the particular estate, and in such case death without issue has uniformly been held to mean death before the death of the

life tenant unless the will shows that the testator intended to refer to a later date than the termination of the life estate." (*Johnson* v. *Boland,* 343 Ill. 552; *Clark* v. *Leavitt,* 330 id. 350; *Risser* v. *Ayers,* 306 id. 293; *Morris* v. *Phillips,* 287 id. 633; *Fulwiler* v. *McClun,* 285 id. 174.) This statement of the rule involved has been employed to ascertain the "time of death" referred to by a testator in the following situations:

(1) Where, by will, an estate is devised to one person *simpliciter,* and in case of his death to another, the contingency of "his death" refers to the death of the devisee during the lifetime of the testator, and such devisee has an absolute estate in fee simple if he survives the testator. *Evans* v. *VanMeter,* 320 Ill. 195; *DeHaan* v. *DeHaan,* 309 id. 323; *Williamson* v. *Carnes,* 284 id. 521; *Tomlin* v. *Laws,* 301 id. 616; *Kohtz* v. *Eldred,* 208 id. 60; *Fishback* v. *Joesting,* 183 id. 463; *Knight* v. *Knight,* 367 id. 646.

(2) Where, by will, an estate is devised to one person, and in case of his death to another, if the contingency of "his death" is coupled with a condition such as "without issue," "without heirs," "without heirs of his body," "without husband or wife," or similar conditions, making the contingency upon which the estate vests, in itself uncertain, the devise over to the ultimate beneficiary takes effect upon the death of the first taker, under the circumstances indicated, at any time, whether before or after the death of the testator. *Liesman* v. *Liesman,* 331 Ill. 287; *Millikin Nat. Bank* v. *Wilson,* 343 id. 55; *Risser* v. *Ayers, supra.*

(3) There is another class of cases where the devise is not immediate but is of a future interest to take effect in possession upon a termination of an intervening particular estate. In such case, unless the will shows the testator intended to refer to a different date than the termination of the particular estate, the rule is that the gift over will take effect if the contingency happens at any time before the termination of the particular estate, and death without issue

means death *without issue* before the termination of the particular estate. *Lachenmyer* v. *Gehlbach,* 266 Ill. 11; *Sheley* v. *Sheley,* 272 id. 95; *Welch* v. *Crowe,* 278 id. 244; *Fulwiler* v. *McClun, supra; Johnson* v. *Boland, supra; Morris* v. *Phillips, supra; Risser* v. *Ayers, supra; Clark* v. *Leavitt, supra; Baird* v. *Garman,* 349 Ill. 597.

From the foregoing it may be seen that if the words used by a testator are simply to the effect that if a child die his descendants shall take a child's share, such language is not necessarily controlled by the first subdivision of the general rule, where there is present the limiting circumstance that the estate is to take effect in possession only upon the termination of an intervening life estate. If, on the other hand, the words used by a testator, after providing for a life estate, should be to the effect that the estate be divided among the children, and in case of a child's death leaving descendants, among such descendants, we have the question presented not only as to the effect of the limiting clause "with descendants," but also the effect upon the devise if he died without descendants, a contingency for which no provision is made.

An examination of the language used by the testator in this case indicates that he wanted his wife, Fredericka, to have the use of all of his real estate and personal property during her life. He does not directly make any specific bequest or devise to the children; he simply provides that upon the death of his wife all of the estate then remaining shall be divided. By the directions to divide both real and personal property he classifies them on the same basis, and since he makes no provision for the widow's disposal of any of the principal of his estate when he makes use of the term that upon her death "all of the estate then remaining shall be divided," the language is subject to the construction that upon the death of his wife all of the estate remaining shall be then divided, since the personal property may be diminished in value or amount by depreciation,

age, insolvency or other cause. When that time comes, the estate then remaining is to be divided among his children. He contemplates, however, a child may die, and so provides "the descendants of any deceased child to take the parent's share." When he refers to the division to take place at the death of the wife, the child's share of the amount then remaining can only be ascertained at the time of the death of the wife, and, in like manner, if the child is dead and the descendant is to take a parent's share, then the date of the actual division must be limited and ascertained by the death of the mother. The testator wanted the division among children, if alive, to be fixed by the mother's death, but he does not make a provision for a disposition of the child's share for a deceased child, except where such deceased child leaves descendants.

Without applying any of the foregoing rules of construction, and considering the words employed by the testator, it seems apparent that he intended his wife to have the use of all of the property for her life, and if all of his children were living at her death he wanted each of them to have a full share, and if one or more of the children were at that time deceased leaving descendants he desired such descendants to have the parent's share. If such intention was in the mind of the testator, then he contemplated a death of a child or children any time before the death of the mother, and not a death of a child or children before his own death. If the suggested intention of the testator does not violate any rule of construction, or create any disposal of property against public policy, the testator's wishes should be followed.

The exact situation presented in this case does not seem to have been passed upon in this court, but there are several cases which are so similar in point of fact that the principle applied in such cases may well apply here. In *Warrington* v. *Chester*, 294 Ill. 524, a similar provision in·a will was held to have created a determinable or base fee, with an

executory devise over in case of death before the life tenant with issue surviving. After providing for a particular estate the language employed in the *Warrington case* was as follows: "Upon the re-marriage of my said wife or upon her death, I give, devise and bequeath the real estate above devised to her * * * to my children, [naming them] to be equally divided among them, my said children, the issue of any child who may have then deceased taking the share to which such deceased child would be entitled to if living." The court refers to *Lachenmyer* v. *Gehlbach, supra,* saying: "The case [*Gehlbach case*] is conclusive as to the estate devised to Oscar P. Chester. There is no substantial difference between the devises in that case and this, except that in that case there was a devise over upon the death of the remainder-man before the termination of the life estate *with* or *without* issue, while in this case the gift over is only if the remainder-man *leaves issue."* Thus the *Warrington case* establishes that the contingency of death may be fixed, under the rules above, in cases where the contingency may either be death with issue, or on the contingency of death *without issue,* or both.

In *Boye* v. *Boye,* 300 Ill. 508, after a life estate had been devised to a wife, the provision was: "At the death of my wife I hereby give and bequeath all of my property to my children, share and share alike, * * * and hereby direct that in the event any of my child or children shall be dead at that time, leaving child or children, then I direct that such child or children shall take its or their parent's portion." In *Hasemeier* v. *Welke,* 309 Ill. 460, the language employed was: "After the payment of such funeral expenses and debts, I give, devise and bequeath to my beloved wife, Caroline Zinn, all my real estate and personal property, to be used by her so long as she lives, and at her death to be equally divided among my children, or in case of their death, then to the heirs of their body." In these last two cases, following the cases of *Lachenmyer* v. *Gehl-*

*bach, supra,* and *Warrington* v. *Chester, supra,* it was held by the court that "there was created a base or determinable fee in the child terminable upon the death of any child during the life of the life tenant, as the condition annexed to the interest of the children is not precedent but operates to divest the estate granted." No distinction seems to be made in the use of the words "descendants," "issue," or "heirs of the body." The fact that a contingency may occur which divests the child's share is made the controlling point in determining the question.

Appellants have cited *Knight* v. *Pottgieser,* 176 Ill. 368, where language quite similar to that employed in the instant case was used. In the *Knight case,* however, the child whose share was involved died without issue, and it was then held that such child took a fee simple subject to a life estate. This case is commented upon in *Warrington* v. *Chester, supra,* wherein it is said of the *Knight case:* "It was properly decided that the remainder was vested and that it was not terminated by the death of the remainder-man without descendants. The language that there is nothing in the will - upon which the supposition may be reasonably based that the testator intended to qualify or limit the character of the interest to be taken by those entitled to be vested with the remainder was correct as applied to the case then in litigation. It was not accurate as a general statement in regard to the devise. There *was a limitation* in the remainder to the children by the words *'the descendant or descendants of a deceased child to take the parent's share in equal proportions.'* If the deceased remainder-man had left a child the case would have been like this."

The authorities just referred to, together with others of like import, make it necessary to hold that Awald Zilm had a determinable fee under the will of his father, and that his death before that of Fredericka Zilm vested a fee simple title in his three children by way of executory devise, subject to the life estate of the widow. An executory devise

is indestructible; upon the happening of the specified event it springs into being, terminating the preceding determinable fee, and is entirely free from conveyance, lien or charge made by the remainder-man, whose base fee is thereby destroyed. *Weberpals* v. *Jenny,* 300 Ill. 145; *Warrington* v. *Chester, supra; McBride* v. *Clemons,* 294 Ill. 251; *Lachenmyer* v. *Gehlbach, supra.*

It is argued by appellees that the remainder, under the will of the deceased, to a child or descendant of child, is a vested remainder, as though that would produce an indefeasible title in Awald Zilm. A base or determinable fee does create a vested remainder, and the mere fact that it may be divested by a contingency occurring does not prevent it from being a vested remainder. (*Corson* v. *Thornburn,* 323 Ill. 338.) A vested remainder is one which throughout its continuance gives to the remainder-man, or his heirs, the right to the immediate possession whenever and however the preceding estate may determine. *Brown* v. *Brown,* 247 Ill. 528; *Lachenmyer* v. *Gehlbach, supra; Carter* v. *Carter,* 234 Ill. 507.

Our holding that Awald Zilm was given a determinable fee by his father's will, which was terminated by Awald's death before his mother, leaving descendants, disposes of the question raised with respect to the rights of Mabel Zilm Shepard; she was not entitled to dower in the property left by the will, because her husband, Awald Zilm, was not seized of a freehold estate of inheritance at the time of his death, and, therefore, she had no interest to enable her to elect to take an estate in lieu of dower.

The decree of the circuit court is reversed and the cause is remanded, with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded, with directions.*